# EXHIBIT 7

STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA
STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID)
SPECIAL EDUCATION PROGRAMS

Mary Hoover on behalf of                            )
Jasmie Hoover, a minor                              )
3021 G Street, SE                                   )
Washington, DC 20020                                )
                                                    )
Attending School:    St. John's Center at Shaed E.S.)
Home School:         Kimball E.S.                   )
                                                    )
v.                                                  )
                                                    )
District of Columbia Public Schools                 )
825 North Capitol, Street, NE Sixth Floor           )
Washington, DC 20002                                )
                                                    )

## A. BACKGROUND INFORMATION.

1. The student's name is Jasmine Hoover. (hereinafter "J.H.").

2. J.H.'s date of birth is August 27th, 1995.

3. J.H.'s address is 3021 G Street, SE, Washington, DC 20019.

4. J.H. currently attends the St. John's Center at Shaed Elementary School (hereinafter "St. John's"), located in the District of Columbia.

5. J.H.'s home school is Kimball Elementary School.

6. J.H.'s legal guardian is Ms. Mary Hoover (hereinafter "Guardian" or "Complainant").

7. The guardian's address is 3021 G Street, SE, Washington, DC 20019.

## B. FACTS AND REASONS FOR THE COMPLAINT

### I. Denial of a Free and Appropriate Public Education – Failure to Comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(e).

8. The Complainant re-alleges paragraphs 1 thru 12.

9. According to Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(e), DCPS, as the local and state education agency, is to make certain that the educational placement, for each child with a disability within its jurisdiction, is able to implement the student's Individualized Educational Program. Moreover, DCPS is to make certain that the parent's or guardians are a part of the decision making process when it comes to the student's educational placement. See also Hoing v. Doe, 484 U.S. 305, 327 (1988) (In Hoing the Supreme Court of the United States concluded that the clear intent of Congress was to make parental involvement the cornerstone of the placement process under the IDEA. In so finding, the Court stressed the importance of a parent's right to be not only notified of each step of a child's educational development, but also involved in the placement decision making process: "Envisioning the IEP as the centerpiece of the statute's education system for disabled children, and aware that schools had all too often denied such children appropriate educations without in any way consulting the parents; Congress repeatedly emphasized through the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness. Accordingly, the Act establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decision they think inappropriate." Id. at 311-12 (emphasis added); Burlington School Comm. v. Massachusetts Dept. of Education, 471 U.S. 359, 373 (1985); Zvl D. By Shirley D. v. District of Columbia Public Schools, 828 F. Supp. at 88-89; Nikita Petties, et. al. v. The District of Columbia Public Schools, Civil Action No. 95-0148; and 34 C.F.R. Sec. 300.552(a) of the Individuals with Disabilities Education Act (According to 34 C.F.R. Sec. 300.552 of the Individuals with Disabilities Education Act "in determining the educational placement of a child with a disability, including a preschool child with a disability, each public agency shall ensure that the placement decision is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options). In this case, it is painstakingly clear that the DCPS failed to adhere to the applicable rules and regulations of the IDEA, as well as the controlling case law in not only this jurisdiction, but also nationwide.

10. An MDT/IEP Meeting was held for J.H. on or about March 16th, 2005.

11. As a result of that meeting, the MDT Team determined that J.H. continued to be eligible for special education and its related services as student with autism and mental retardation. See Individualized Educational Program dated March 16th, 2005.

12. Specifically, J.H. requires twenty-seven and a half (27.5) hours of specialized instruction a week, one (1) hour of speech and language services a week, one (1)

2

hour of occupational therapy services a week, and behavioral consultation two (2) hours a month with a psychologist. Id.

13. At the conclusion of the MDT/IEP Meeting, DCPS offered the guardian placement for J.H. at Maime D. Lee School. See MDT/IEP Meeting Notes dated March 16th, 2005.

14. J.H's MDT/IEP Meeting was reconvened on June 10th, 2005, to do, inter alia, review a recent clinical psychological evaluation conducted on J.H.. See Individualized Educational Program Meeting Notes dated June 10th, 2005.

15. At the MDT/IEP Meeting, DCPS informed the guardian that J.H. would be placed at Maime D. Lee in the fall of the upcoming school year. Id.

16. The guardian was opposed to this placement determination by DCPS given the fact that DCPS, at the MDT/IEP Meeting for the student, prior to the completion of all assessments, informed the guardian that Maime D. Lee would be the student's new educational placement. Id.

17. Specifically, the guardian felt that the placement decision made by DCPS at the MDT/IEP Meeting in March was premature as all of J.H.'s evaluations had yet to be completed and all of her needs determined. Needs that could directly impact J.H.'s educational placement. Id.

18. DCPS disagreed and informed the guardian that J.H.'s new placement would be Maime D. Lee. Id.

19. DCPS did however, allow the guardian the right to visit Maime D. Lee prior to reconvening of the MDT/IEP Meeting for J.H in July. Id.

20. The guardian, on or about June 14th, 2005, went to Maime D. Lee School to observe the program there.

21. At Maime D. Lee, the guardian spoke with Helena Newman, the program director at Maime D. Lee, and discussed J.H.'s special education instruction and related service needs.

22. Ms. Newman informed the guardian that the J.H.'s placement at Maime D. Lee would not be appropriate as J.H.'s primary disability is autistic and Maime D. Lee services children whose primary disability is mental retardation.

23. DCPS' placement of J.H. at Maime D. Lee is inappropriate and unable to meet the J.H.'s special education needs.

24. DCPS' failure to comply the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(e) and place J.H. in an

3

appropriate special education program, and allow the guardian to participate in the placement decision for J.H. amounts to a denial of a Free and Appropriate Public Education.

## II. Denial of a Free and Appropriate Public Education – Failure to Comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(d)(1)(A).

25. The Complainant re-alleges paragraphs 1-24.

26. According to Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(d)(1)(A), DCPS, as the local and state education agency, is to make certain that the each IEP for each student eligible for special education and its related services within its jurisdiction contain a statement of the child's present level of academic achievement and functional performance, 2) a statement of the student's measurable annual goals, 3) a description of how the child's progress toward meeting the annual goals described in paragraph (2) of this subsection will be measured, and 4) any statement of the special education needs and related services and supplementary aides for a student. See Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(d)(1)(A). In the instant matter, DCPS has failed to comply with the requirements of the IDEA.

27. Here an MDT/IEP Meeting was held for the student on or about March 16th, 2005.

28. At the MDT/IEP Meeting, Individualized Educational Program was developed. See Individualized Educational Program dated March 16th, 2005.

29. The IEP developed by DCPS is inappropriate and in violation of the IDEA.

30. The IEP developed for J.H. is in violation of the requirements set forth in Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(d)(1)(A) because the IEP for J.H. contains no present levels of academic performance; the IEP fails to describe how J.H.'s progress toward her annual goals will be meet; and the IEP fails to identify J.H.'s need for her one-one-one dedicated aide.

31. DCPS' failure to develop an appropriate IEP in compliance with Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(d)(1)(A).

## III. Denial of a Free and Appropriate Public Education – Failure to Comply with Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A).

4

32. The Complainant re-alleges paragraphs number 1-31.

33. According to Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A), DCPS, as the local and state education agency responsible for ensuring the special education needs of its students, is required to consider all evaluations conducted on a student, event those provided/obtained by the parent when determining a student's special education needs. See Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A).In the instant matter, it is clear DCPS failed to do this.

34. Specifically, an MDT/IEP Meeting was held for the student on March 16th, 2005.

35. At the MDT/IEP Meeting, the MDT Team agreed that the student was in need of a psychological evaluation. See MDT/IEP Meeting Notes dated March 16th, 2005.

36. Because of an agreement already in place between DCPS and St. John's, St. John's conducted the clinical psychological evaluation on J.H.

37. The clinical psychological evaluation was conducted on J.H. on or about June 6th, 2005. See Clinical Psychological Evaluation dated June 6th, 2005.

38. The evaluation was provided to DCPS at the MDT/IEP Meeting that was reconvened for the student on June 10th, 2005. See MDT Meeting Notes dated June 10th, 2005. However, DCPS has yet to have the outside clinical psychological evaluation reviewed by the appropriate persons on their staff, in order to allow the MDT/IEP Team for J.H. to consider the findings and recommendations of the clinical psychological evaluation.

39. DCPS' failure to consider the guardian's independent clinical psychological evaluation, in accordance with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A), amounts to a denial of Free and Appropriate Public Education.

### IV. Denial of a Free and Appropriate Public Education – Failure to Comply with Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A).

40. The Complainant re-alleges paragraphs number 1-39.

41. According to Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A), DCPS, as the local and state education agency responsible for ensuring the special education needs of its students, is required to consider all evaluations conducted on a student, event those provided/obtained by the parent when determining a student's special

5

education needs. See Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A). In the instant matter, it is clear DCPS failed to do this.

42. Specifically, an MDT/IEP Meeting was held for the student on March 16th, 2005.

43. At the MDT/IEP Meeting, DCPS was presented with a Dedicated Aide Justification Evaluation that was recently completed on J.H. by staff at her current school. See MDT/IEP Meeting Notes dated March 16th, 2005.

44. DCPS informed the rest of the MDT Team that they could not yet consider the Dedicated Aide Justification Evaluation recently conducted on J.H. because the Dedicated Aide Justification Evaluation would have to be reviewed by the appropriate persons within DCPS. Id.

45. J.H.'s MDT/IEP Meeting was eventually reconvened on June 10th, 2005. See MDT/IEP Meeting Notes dated June 10th, 2005.

46. DCPS, at the MDT/IEP Meeting informed the guardian, for a second time that they could not yet consider the Dedicated Aide Justification Evaluation conducted on J.H. because the evaluation had yet to be reviewed by the appropriate persons within DCPS. Id.

47. To date, to the best of the parent's and counsel's knowledge and belief, DCPS has yet to review the Dedicated Aide Justification Evaluation for J.H. in order for the MDT Team to adequately consider the findings and recommendations of said evaluation.

48. DCPS' failure to consider J.H.'s Dedicated Aide Justification Evaluation, in accordance with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A), amounts to a denial of Free and Appropriate Public Education.

**V. Denial of a Free and Appropriate Public Education – Failure to Comply with Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(d)(1)(B).**

49. The Complainant re-alleges paragraphs number 1-48.

50. DCPS, according to Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(d)(1)(B), DCPS, as the local and state education agency responsible for the special education needs of students residing within its jurisdiction, is to ensure that the the IEP Team for each child with a disability include the following: 1) the parents of the child; 2) Not less than one (1) regular education teacher of the child; 3) Not less than one (1) special education teacher of the child; 4) a representative of the public agency; 5) an

6

individual who can interpret the data; 6) at the discretion of either the parent or the agency, other individuals who can interpret the data; and 7) if appropriate, the child. In the instant matter, it is clear DCPS has failed to comply with the requirements of the statute.

51. Specifically, an MDT/IEP Meeting was held for the student on June 10th, 2005.

52. The purpose of the MDT/IEP Meeting was to review the recent clinical psychological completed on the J.H. and revise her IEP as necessary. See New Addendum Meeting Page dated June 10th, 2005.

53. At the MDT/IEP Meeting, DCPS failed to have any psychologist present in order to review the recent clinical psychological evaluation, failed to have any regular education teacher present, failed to have any special education teacher present, and failed to have any evaluators or service providers for the student present. These persons were required to be present at the MDT/IEP Meeting for J.H.

54. DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(d)(1)(B) amounts to a denial of a Free and Appropriate Public Education.

### C. RELIEF REQUESTED

**WHEREFORE**, the guardian, by and through counsel, requests the following relief:

55. A finding that DCPS denied J.H. FAPE by failing to have J.H. placed in an appropriate special education program as required under the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(e);

56. A finding that DCPS denied J.H. FAPE by failing to involve the guardian in the placement decision for J.H. as required under the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(e);

57. A finding that DCPS denied J.H. FAPE by failing to adequately consider the findings and recommendations of the clinical psychological evaluation as required under the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A);

58. A finding that DCPS denied J.H. FAPE by failing to adequately consider the findings and recommendations of the Dedicated Aide Justification Evaluation as required under the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(b)(2)(A);

59. A finding that DCPS denied J.H. FAPE by failing to have an appropriate MDT Team present at J.H.'s MDT/IEP Meeting on June 10th, 2005, as required under the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614(d)(1)(A);

60. That DCPS, within five (5) calendar days, provide J.H. with her one-on-one dedicated aide;

61. That DCPS, within five (5) calendar days, shall send out referral packets on J.H. to the Ivymount School, the Katherine Thomas School, and Kennedy Kreiger School;

62. That DCPS, within ten (10) business days upon notice from the guardian's counsel for the student's acceptance or rejection from the three (3) aforementioned programs, reconvene J.H.'s MDT/IEP Meeting, with the guardian, and the guardian's representative, and all necessary persons, at J.H.'s current school, St John's, to review all outstanding evaluations, revise and update the student's IEP as necessary, to include on the student's IEP her need for a dedicated aide, and issue a Prior Notice of Placement to one of the three (3) programs identified in paragraph number sixty-one (61), thereby funding the student, at one of the programs identified in paragraph number ten (10);

63. That DCPS shall provide J.H. transportation to her new educational placement, and provide Extended School Year Services;

64. That DCPS shall provide J.H. with one (1) year of compensatory services in the form of one-on-one tutoring;

65. That if DCPS fails to commence the tutoring within thirty (30) calendar days of the development of J.H.'s compensatory education plan, that the guardian shall have the right to get independent tutoring at DCPS' expense;

66. That DCPS agrees to pay counsel for the guardian reasonable attorney's fees in an amount not to exceed Four Thousand Dollars and Zero Cents ($4,000.00), as full payment of attorneys' fees and related costs incurred in the matter;

67. All meetings shall be scheduled through counsel for the guardian, Roxanne Neloms, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

68. That DCPS will be given a day for day extension for any delay caused by the guardian, J.H., counsel for the guardian, or the guardian's educational advocate;

69. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

8

70. In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement, the parent shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

71. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student no later than sixteen (16) business hours prior to the convening of any meeting;

29. The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

72. Send all notices to counsel for the parent with copies of such to the parent and in the parent's native language; and

73. That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the guardian's representative, Roxanne Neloms, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

74. That DCPS, in the event they fail to answer/respond to the issues alleged in the guardian's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the guardian will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the guardian's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

75. That DCPS, within fifteen (15) calendar days of receiving the guardian's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), respond to the guardian's request alleging any insufficiency of notice.

76. That DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), and allege any insufficiency of the guardian's administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time.

77. That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), within fifteen (15) calendar days of receiving the guardian's administrative due process complaint, shall contact the guardian's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

78. That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), convene the Resolution Session Meeting, with the guardian, the guardian's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons: 1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student, and 6) any service providers for the student.

79. That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B) constitute joint waiver between DCPS and the guardian to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the guardian's counsel; and

80. A finding that the parent is the prevailing party in this action.

_____
Roxanne Neloms, Esq., *Lead Counsel*
Domiento C.R. Hill, Esq., *Of Counsel*
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2008
Counsel for the Guardian

**CERTIFCATE OF SERVICE**

I, Roxanne Neloms, Esq., hereby certify that the facts alleged in this complaint, to the best of my knowledge and belief, are true and correct. I further certify that a copy of the guardian's administrative due process complaint was served to the District of Columbia Public Schools' Office of Student Hearings, via facsimile, at 202-442-5556.

*[signature]*
Roxanne Neloms, Esq., *Counsel*
Domiento C.R. Hill, Esq., *Of Counsel*
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2008
Counsel for the Guardian

```
*********************
***  TX REPORT  ***
*********************

TRANSMISSION OK

TX/RX NO              3171
CONNECTION TEL                    92024425556
CONNECTION ID
ST. TIME              07/06 09:40
USAGE T               01'34
PGS. SENT             12
RESULT                OK
```

# James E. Brown & Associates, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez! |
| Domiento C.R. Hill*◊ | 1220 L Street, NW | Tilman L. Gerald |
| Brenda McAllister*◊ | Suite 700 | Roxanne D. Neloms |
| Roberta Gambale | Washington, DC 20005 | John A. Straus |
| Miguel A. Hull | Telephone: (202) 742-2000 | Dolores S. McKnight |
| Christopher L. West | Facsimile: (202) 742-2098 | Marshall Lammers° |

* Admitted in Maryland Only        e-mail: Admin@Jeblaw.biz        ! Admitted in Bolivia Only

# FAX COVER SHEET

TO: Sharon Newsome, Scheduling Coordinator, Office of Student Hearings, DCPS

FROM: Domiento C.R. Hill, Esq. for Roxanne Neloms, Esq.

DATE: July 6th, 2005

FAX NO: 202-442-5556

SUBJECT: J.H., DOB: 8/27/95

NUMBER OF PAGES INCLUDING COVER SHEET: 12

COMMENTS: Administrative due process hearing request. Thank-you for your assistance.

STATEMENT OF CONFIDENTIALITY: